IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
IN ADMIRALTY
File No. 7:14 CV-00077

| In the Matter Of: | ) | |
|---|---|---|
| | ) | |
| Bald Head Island Transportation, Inc. | ) | MEMORANDUM OF LAW |
| ("Owner"), Bald Head Island Limited LLC | ) | IN SUPPORT OF |
| ("Manager") and M/V ADVENTURE, Official | ) | TAMMY STRICKLAND'S |
| No. 916323, together with her Engines, Tackle, | ) | MOTION TO STRIKE |
| and Apparel <u>for Exoneration from or Limited</u> | ) | |
| <u>Liability,</u> | ) | |

NOW COMES the Claimant, Tammy Strickland, by and through her undersigned counsel of record pursuant to local rule 7.2 submitting the following legal authority and argument in support of her Motion to Strike. Claimants Bonnie Cockrell, Steven Donecker and Mary Beth Springmeier join Claimant Strickland in her Motion.

## NATURE OF THE CASE

This is a motion filed by Claimant Tammy Strickland seeking to strike supplemental discovery responses served after the close of discovery which seek to alter Plaintiffs' account of how the accident occurred and alter the knowledge of its managing agents. Plaintiffs altered their prior discovery responses defensively in an attempt to create a factual issue in response to this Claimant's motion for summary judgment. Plaintiffs are also using their supplemental responses offensively in support of their motion for partial summary judgment. The factually contradictory responses are untimely and in violation of the discovery scheduling order entered in this action. Accordingly, Plaintiffs' responses should be disregarded by the Court.

## STATEMENT OF FACTS/PROCEDURE POSTURE

On August 21, 2014, this Court entered a discovery scheduling order ("DSO") governing Phase I of Plaintiffs' limitation action. Claimants served their interrogatories on Plaintiffs on September 9,

Page 1 of 11

Case 7:14-cv-00077-F    Document 83    Filed 04/06/15    Page 1 of 11

2014.  Upon request of the Plaintiffs, Claimants granted Plaintiffs and additional 30 days to respond to these interrogatories. The DSO was amended by consent of the parties on September 25, 2014.  The amended DSO set the following pertinent discovery deadlines:

>  Expert Witnesses:     December 12, 2014 for party with burden of proof,
>                        January 12, 2015 for opposing/responsive experts.
>  Close of Discovery:   February 11, 2015.
>  Dispositive Motions:  March 30, 2015.

The amended DSO left all other provisions of the original DSO unmodified.  Notably, the DSO orders "Supplementation under 26(e) must be made promptly after receipt of the information by the party or counsel, but in no event later than the close of discovery."

On November 12, 2014, Plaintiffs served their responses to Claimants' first set of interrogatories, which were verified by Charles A. Paul, III.  The responses contained the following relevant answers to interrogatories 4, 7 and 11:

*4) Describe fully and completely how you claim the Incident occurred, its cause, any errors or omission contributing thereto and by whom committed, Identifying all Persons with knowledge thereof and all Documents, ESI and the Electronic media related thereto.*

   **ANSWER:** *Limitation Plaintiffs state that the grounding occurred because Captain Eugene Melton lost track of his position, began the port turn too soon, and held the port turn too long causing the Vessel to encounter water shallower than the Vessel's draft. . . . .*

*7) Identify every fact that You claim supports the allegations contained in Paragraph 9(c) of your Complaint (i.e., that "None of the injuries and damages alleged by any of the Claimants was caused by any fault or neglect of the Plaintiffs, jointly or severally,"). Identifying all persons with knowledge thereof and all Documents, ISI and the Electronic media related thereto.*

   **ANSWER:** *See Limitation Plaintiffs' responses to Interrogatories 5 and 6 herein.*

   *Investigation into this matter is ongoing and this response will be supplemented in necessary in accordance with the Federal Rules of Civil Procedure.*

*11) On the Incident Date, did You have a (formal or informal) safety management system (e.g. ISM, etc) in effect that applied to the Vessel?  If so, Identify all Documents, ESI and the Electronic media in effect on the Incident Date which were part of Your Vessel's safety management system, including without limitation, those which related to keeping or stationing a proper lookout, watch standing, vessel electronic use, collision avoidance, grounding avoidance, manning requirements, navigating in*

*the proximity of other vessels, crew endurance management, crew relief and voyage planning. This includes but is not limited to Your safety management manual, vessel instructions for key shipboard operations pertaining keeping or stationing a proper lookout, watch standing, vessel electronic use, collision avoidance, grounding avoidance, depth monitoring, radar use and observation, manning requirement, navigating in the proximity of other vessels, crew endurance management, crew relief and voyage planning, and safety management system internal audits which verify safety activities on the Vessel, from 1 January 2009, through the present. Include in your response an Identification of all Persons with knowledge thereof and Documents, ESI and the Electronic Media related thereto.*

**ANSWER:** *Yes Limitation Plaintiffs had a safety management system in effect that applied to the vessel. In further response...........*

*In addition to the information contained in the aforementioned responses and documents, regarding general safety for Limitation Plaintiffs, BHIL hired Richard Scearce as Safety Officer in 2005. Mr. Scearce provided a number of safety training sessions for BHIL employees including CPR, First aid, AED, blood borne pathogen training, accident reporting, ride with the Drive, MSDA training, lock out tag out, ANSL Fire Suppression Training and certification, Fire extinguisher training, training, and other sessions which applied to the Vessel. BHIT also provided safety stand down meetings from time to time and held Employee safety recognition cook-outs to reward safe behavior.*

*Claude McKernan, Shirley Mayfield, and Richard Scearce, along with all captains, crewmembers, and other employees have knowledge regarding the safety management system.*

*Investigation into this matter is ongoing and this response will be supplemented if necessary in accordance with the Federal Rules of Civil Procedure. (Ex. 1 Plaintiffs' Nov. 11, 2014 Interrogatory responses)*

Over the course of the next two and a half months, Claimants noticed and took approximately twenty-two (22) depositions, conducted over at least 100 hours. Charles A Paul, III was deposed and examined concerning the Interrogatories he verified and adopted the responses as as his testimony in his deposition which occurred on 31 December 2014. See Paul, 91:18 – 94:1 & Ex. 86. On December 15, 2014, Plaintiffs produced a corrected expert report which concluded *"The cause of the grounding incident is directly related to the manner in which the vessel was operated on the subject run. The primary factors are related to operator error in the form of inattention combined with possible limitations on visibility due to the sun position and route of travel being aligned."* (Ex. 2. ESI Report p. 11).

On January 19, 2015, Plaintiffs disclosed the report of their rebuttal expert, Capt. Don Davis.

Capt. Davis opined in his report *"The sole and proximate cause of the grounding of the M/V Adventure (Official No. 916323), that occurred on the south end of Battery Island, Cape Fear River, on the morning of December 17, 2013, was the result of temporary loss of situational awareness by the master, Capt. Eugene Rodney Melton.* (Ex. 3 Davis Report p. 7).[1]

On March 3, 2015, Claimant Strickland submitted a Motion for Summary Judgment on Plaintiffs' Limitation Action alleging that there is no genuine issue of material fact as to the accident being caused by or contributed to by Capt. Melton's inattention and loss of situational awareness, then citing numerous proofs of the Plaintiffs' <u>actual</u> knowledge of this condition in the form of their documentation of it in Capt. Melton's personnel records. As a secondary ground for summary judgment, Claimant Strickland argued that the verified claim of Plaintiffs' own safety officer, Richard Scearce, warranted summary judgment.

Presumedly while preparing a response to Claimant Strickland's Summary Judgment Motion, Plaintiffs apparently and finally realized that their prior responses were dispositive against them in both the exoneration and the limitation cases. They then, in an attempt to create a factual dispute, purported to amend their interrogatory responses by altering their responses to Claimants' Interrogatories.

Plaintiffs altered their response to Interrogatory #4 by stating, "Limitation Plaintiffs state that the grounding was solely caused by a *spontaneous navigational error* made by Captain Eugene Melton when he began a port turn too soon and held the port too long causing the Vessel to encounter water shallower than the Vessel's draft. Claimants are directed to Limitation Plaintiffs' Initial Disclosures for information regarding people who may have knowledge regarding the grounding after it occurred. Claimants are further directed to the USCG Data regarding track and position of the vessel on the day

---

[1] Claimants reject both of Plaintiffs' expert reports, and reserve their right to object, without waiver, to the contents on grounds of Daubert, lack of authentication / verification, and all other bases available.

of the grounding." Plaintiffs also altered their response to Interrogatory #7 to read, "Limitation Plaintiffs state that the sole cause of the grounding was Captain Melton's *spontaneous and unique navigational error* constituting simple, ordinary negligence without any prior warning. Such negligence occurred in the scope of Captain Melton's employment with Bald Head Island Limited.

Notably, these new interrogatory responses not only contradict their sworn interrogatory responses above, but also the sworn testimony of their CEO, that he agreed with the USCG findings that the accident occurred as a result of Captain Melton's loss of situational awareness" or "failure to realize or know the location of the ADVENTURE with respect to Battery Island sandbars." ( Paul, 43:2 – 51:5 & Ex. 82). ), and of their employee Captain Melton himself, who testified that this caused him to ground. (CITE).Melton, 10:14-19:10 & Ex. 74 (79:11-24).  Plaintiffs' Transportation Manager also agrees that the grounding was the result of Captain Melton's "loss of situational awareness," which means "understand[ing] where you are in relation to the things around you, and what's moving and what's not." Mckernan Vol 1, 122:11 – 123:3 & Vol 2, 52:5-15.  Plaintiffs' CFO, Shirley Mayfield, also testified: "having ridden on those boats all that time, I, unfortunately believe that Captain Melton just did not know where he was." Mayfield, 33:6-11.  Even their experts, "ESI" and Davis, rendered opinions that the accident was caused by Melton's loss of attention and situational awareness. Ex. 3 Davis Report p. 7 & Ex. 2. ESI Report p. 11.  Plaintiffs cannot now, after the discovery deadline, change these answers.

Plaintiffs also altered their response to Interrogatory #11 by adding the following new limitation on their prior response about Safety Officer Scearce's duties, "*Scearce had no responsibilities with respect to the selection, monitoring, assignment or performance of any captains or crew members for the ferries, nor did he provided any assistance with respect to the maintenance of the ferries, the navigation of any vessel or the operational safety of those voyages.*" (Ex. 4 Amended Responses)  This flatly contradicts what Plaintiffs' own senior management has testified to about

Scearce's responsibilities, namely that he was the *"top level person with safety responsibilities,"* conducts safety training on *"marine and non-marine,"* issues and is Chair of BHIL's *"safety council."* Paul, 128:23 - 129:18 & English, 51:14 - 52:5. According to Mayfield "it was not at all unusual for [Scearce] to ride the boats and talk with the crews about safety or whatever." Mayfield, 45:20-24.

On March 30, 2015, Plaintiffs' sought partial summary judgment against Claimants' claims for punitive damages and submitted their amended interrogatory responses in support of their motion.

## STANDARD OF REVIEW

When a Scheduling Order sets forth discovery deadlines for supplementation of discovery responses and a party purports to supplement its responses, the court's inquiry into whether there has been a violation is governed by F. R. Civ. P. 16(f). This rule also governs the issue of what, if any, sanctions to impose as a result of violation of the rule. The court may issue any just order including one imposing sanctions authorized by F.R. Civ. P. 37(b)(2)(A)(ii)-(vii), which include:

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

The primary focus of Rule 16(f) analysis is *good cause* shown for the late disclosure. *SMD Software, Inc. v. Emove, Inc.* No. 5:08-CV-403-FL, 2013 WL 5592808 (E.D.N.C. 2013) (unreported attached as Ex. 5). "If the court finds such violation without good cause, it has 'broad discretion in employing sanctions'" *Id.* In determining what sanctions are appropriate the court may consider: (1) The explanation for the failure to obey the order; (2) the importance of the testimony; (3) the

prejudice to the opposing party by allowing the disclosures; (4) the availability of alternative or lesser sanctions; (5) the interest in the expeditious resolution of the litigation; (6) a court's need to manage its docket; and (7) public policy favoring disposition of cases on the merits. *Id* quoting *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 309 (M.D.N.C. 2002)

There is legal authority in the Fourth Circuit stating that the five factors for determining whether evidence should be excluded under Rule 37(c)(1) as outlined in *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F. 3d 592, 597 (4th Cir. 2003) should also be used in Rule 16(f) analysis. *East West, LLC v. Rahman*, No. 1: 11-CV-1380, 2012 WL 4105129 at *6 (E.D.Va. 2012) (Unreported and attached as Ex. 6). The Rule 37 factors are: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

## **LEGAL ARGUMENT**

### 1. *Aveka* Factor Analysis Demonstrates that Plaintiffs' "Amended" Responses Violate the DSO

Plaintiffs' attempt to use amended interrogatory responses fails the letter of the DSO and cannot be supported by good cause. As of the filing of this document, there is no explanation for the Plaintiffs' purported alteration of their prior interrogatory responses, besides attempting to create a fact issue and be rescued from Interrogatories Responses fatal to their case. Plaintiffs did not move to amend the DSO, nor did they inquire whether Claimant would consent to such a supplementation. Running the amended response through the *Akeva* factors affirms that the response should be stricken, per:

(1) **Explanation for violation.** There was no explanation provided for the alteration of the prior response. One can conclude that the purpose of the amendment was to attempt to create a fact issue to defeat Claimant Strickland's motion for summary judgment and survive summary judgment themselves, since the supplemental response was served the day before Plaintiffs'

Page 7 of 11

Case 7:14-cv-00077-F   Document 83   Filed 04/06/15   Page 7 of 11

response to the motion;

(2) **Importance of the matter.** The matter here directly relates to the very heart of the case – privity and knowledge of a condition which likely caused the grounding. Plaintiffs' own personnel files show they knew Capt. Melton was inattentive and lost situational awareness at the helm and would even leave the helm unattended while underway. They now want to say a quick steering error or error in judgment caused the accident. If the cause of the subject grounding had been a steering error, Plaintiffs would have known from the beginning.

Further, Plaintiff's attempt to now restrict the duties and knowledge of its Safety Officer about which they had testified at length, in the midst of preparing a summary judgment response, is inexcusable. There is no logical explanation for Plaintiffs' attempt to alter its responses if the interrogatory response is not important. It is important, and dispositive.

(3) **Prejudice.** Allowing the supplemental disclosure would badly prejudice all Claimants, Claimants followed a logical progression in discovery: serve written discovery, then take depositions based upon the responses to the written discovery requests. Claimants took 22 depositions over more than 100 hours and produced 2 expert reports based on the prior responses to their discovery requests. Further, Claimants did not depose Plaintiffs' experts, since they support Claimants' theory and Tammy Strickland's motion for summary judgment. Plaintiffs cannot contradict their own experts after expiration of the discovery deadline.

(4) **Lesser sanctions.** More onerous sanctions are dismissal of the case, or summary judgment against the Plaintiffs. Lesser sanctions include what is asked for here. Nothing less than striking the attempt to change the case at the 11th hour will suffice. Anything less will not only require re-taking most of 22 depositions (nearly all of whom were deposed about Captain Melton's inattentiveness, and topics related thereto, as well as Scearce's responsibilities and roles), re-analyzing the case from this new perspective claimed in the "amended" discovery

responses, not to mention discussing the matters with various potential experts and paying a number of them to analyze the case for "navigational error" and related changes, assuming any can even be found. It would be too time-consuming and expensive to restart discovery in this matter.

(5) Striking the "amended" responses is the most expeditious way to move this case along, without unfair prejudice to either side.

(6) Striking the "amended" responses supports the Court's need to manage its docket; and

(7) Allowing the amendment does not support disposition of the case on the merits, it will merely slow down resolution of the action by possibly creating a "sham" fact issue. "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984)

## 2. Plaintiffs' Amended Responses are not "Timely" pursuant to Fed. R. Civ. P. 26(e)

Should the Court see a distinction between an amended interrogatory to correct a mistake and a supplemental interrogatory response, the changed response still should not be allowed because the amendment is untimely. Plaintiffs are attempting to change their account of how the accident occurred and change the knowledge attributable to its corporate safety officer. Both of these new answers, if true, were apparent well before close of the discovery deadline in this action. A recent unreported case out of the Middle District of Tennessee perfectly sums up the issue of contradictory amended interrogatory responses, stating, *"Indeed, the 'sham affidavit' rule may be even more appropriate where a party submits contradictory interrogatory responses, because those responses, unlike deposition answers, are generally provided after considerable thought and drafted with the assistance of counsel."* Thompson v. Bruister & Associates, Inc., No. 3:07-00412, 2013 WL 1092218, at *5 (M.D. Tenn. Mar. 15, 2013) (Unreported and attached as Exhibit 7)

The *Thompson* case is closely analogous to the case at bar because it deals with a knowledge standard contained in a labor law safe-harbor provision. The Defendant tried to prove it did not know about the recent change in the law to avoid penalties as these Plaintiffs are attempting to prove that they did not know about their long time employee's frequent inattentiveness or that their safety officer didn't really know about their reckless policies to reduce expense, time and wake. The court in *Thompson*, did not allow the Defendants to submit contradictory interrogatory to gain advantage during dispositive motions and this Court should do the same.

## CONCLUSION

This case has been thoroughly prepared by both sides and is ripe for disposition through motion practice. One-hundred eighty degree, post-discovery-deadline alterations to important Interrogatory responses should be rejected by the Court. For the foregoing reasons as well as such as are apparent in the record, Claimants' Motion to Strike motion should be granted.

Respectfully submitted this, the 6th day of April, 2015.

**HUMPHRIES & KING, P.C.**
/s/ **Justin K. Humphries**
Justin K. Humphries, NCSB # 36833
616 Princess Street
Wilmington, North Carolina 28401
Telephone: (910) 332-0721
Facsimile: (910) 290-7817
Email: justin@kinglawonline.com
*Counsel for Claimant Tammy Strickland*

# CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing:

## MEMORANDUM OF LAW IN SUPPORT OF
## TAMMY STRICKLAND'S MOTION FOR SUMMARY JUDGEMENT

was filed with the Clerk of the Court using the CM/ECF system and notification will be sent to the following:

| | |
|---|---|
| Rountree Losee, L.L.P. | Clark, Newton, & Evans, PA |
| Attn: Geoffrey A. Losee, Esq. | Attn: Don Evans |
| 2419 Market St. | 509 Princess Street |
| Wilmington, NC 28403 | Wilmington, NC 28401 |
| glosee@rountreelosee.com | dte@clarknewton.com |

This, the 6th day of April, 2015.

/s/ Justin K. Humphries
Justin K. Humphries